UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KEITH H. KING,

          Petitioner.

    v.

JOHN SOTO, Warden

          Respondent.

Case No.14-cv-03554-BLF

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

      Keith H. King Petitioner, a state prisoner represented by counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his state criminal conviction for first degree burglary under California Penal Code § 459-460(a). Pet., ECF 1. Petitioner asserts three claims: (1) the trial court violated his due process rights by denying his request to change his plea to not guilty by reason of insanity ("NGI"); (2) the trial court violated his right to present a defense by limiting the scope of the expert witness's testimony; and (3) the trial court violated his constitutional rights by not instructing the jury that an individual juror could not find him guilty of burglary if the juror was unable to conclude which of the target offenses he committed. *Id.* Respondent filed an answer addressing the merits of Petitioner's claims, and exhibits in support thereof. ECF 11, 13-15. Petitioner filed a traverse. ECF 20. Having reviewed the briefs and the underlying record, the Court concludes that Petitioner is not entitled to relief and DENIES the petition.

## I.   BACKGROUND

      In 2011, Petitioner was tried and convicted in Santa Clara County Superior Court. A jury found Petitioner guilty of first degree burglary. Pet. 1-2; Cal. Penal Code § 459. On September 23, 2011, the trial court sentenced Petitioner to 29 years to life in state prison. Pet. 2.

Petitioner appealed and, on June 20, 2013, the California Court of Appeal issued a written opinion affirming the judgment. Ex. 6 to Answer ("Cal. Ct. App. Order"), ECF 15-3. On September 18, 2013, the California Supreme Court denied the petitions for review in both the direct review and habeas cases. Ex. 9-10 to Answer, ECF 15-5. Petitioner initiated the instant petition in this Court on August 1, 2014. Pet.

## II.    SUMMARY OF EVIDENCE AT TRIAL

In its written opinion, the state appellate court fairly and accurately summarized the factual background of Petitioner's case at trial as follows:

### A.    The Burglary

On June 6, 2005, Lorena Wright lived on Grey Ghost Avenue in San Jose with her husband and three-month-old daughter. Wright's husband had gone to work at about 5:30 a.m. that day.

At about 6:00 a.m., Wright was awakened by a noise. She went into her dining room, carrying the baby, and saw defendant outside her house. Defendant was trying to take the screen off a window and was talking to himself. Wright called 911.

Wright told the 911 dispatcher that someone was trying to get into her house. In a whisper, she remained in communication with the dispatcher for about 13 minutes. She heard defendant in the backyard, trying to open a door. She then heard him on the side of the house, trying to open a window near the fireplace. She eventually heard a noise "[l]ike he break it open." About nine minutes after she first called 911, Wright heard defendant inside her house.

At trial, Wright described seeing defendant inside her guest bedroom, trying to open her large safe. She described how defendant was talking to himself each time she saw him, and how he was making a noise "kind of like" moaning.

About a minute after defendant's entry into the residence, the dispatcher informed Wright that an officer was pulling up in front of her house. The dispatcher instructed her to remain on the phone and "[s]tay in the bedroom" with the door locked, but after another two or three minutes, Wright went outside and contacted the officers.

San Jose Police Sergeant Russell Bence, one of the responding officers, went to the back of Wright's house. He saw defendant inside, walking towards the back door. Upon seeing the officer, defendant turned and walked towards the front of the house. When the officer ordered him down to the ground, defendant complied. Defendant was taken into custody.

The parties stipulated that "none of the witnesses in this case observed the defendant with an erection, with his pants off, his zipper down, or his private parts exposed."

## B.     Defendant's Post-Arrest Statements

San Jose Police Officer Nicholas Barry interviewed defendant. He read the *Miranda* advisements, and defendant indicated he understood each one. Defendant began talking after the officer asked if he wanted to explain what had happened.

According to defendant, "a woman friend at a party told him to go over to [Wright's] house . . . because the woman there needed him to show her daughter the difference between a hard penis and a soft penis." The woman at the house let him inside so he could "fuck in the safe because the safe was for fucking." The man of the house "was so mad that he was there to fuck his woman that he removed the screens from the house to make [defendant] look bad," although "the man was also secretly turned on that he was there to fuck his woman."

Defendant was jittery during the interview process, which can be a sign of being under the influence of a controlled substance. However, Officer Barry did not suspect that defendant was under the influence and thus did not order a blood or urine sample.

## C.     Expert Witness Testimony

Dr. Brad Novak, a psychiatrist, testified for the defense. He evaluated defendant in 2008. He read police reports, mental health records, and interviewed defendant. He noted that defendant had been hospitalized for psychiatric problems five times in the months leading up to the incident. All of these hospitalizations were related to methamphetamine or alcohol use.

Dr. Novak believed that defendant suffered from several mental disorders at the time of the offense: amphetamine dependence, alcohol dependence, cocaine dependence in remission, opiate dependence in remission, amphetamine intoxication, alcohol intoxication, amphetamine-induced psychotic disorder with delusions, and antisocial personality disorder. In particular, he was suffering from paranoid delusions.

Dr. Novak explained that a psychosis is characterized by confusion and "a break from reality." He opined that defendant's behavior at the time of the incident was consistent with someone who was intoxicated and psychotic. Defendant's statements were consistent with amphetamine intoxication, which can cause a person to become hypersexual and confused.

## D.     Pretrial Proceedings

On June 8, 2005, the District Attorney filed a complaint charging defendant with first degree burglary by entering an inhabited residence with the intent to commit theft.  §§ 459, 460, subd. (a).  The complaint alleged that defendant had four prior convictions that qualified as strikes, §§ 667, subds. (b)-

3

(i), 1170.12, and three prior convictions that qualified as serious felonies. § 667, subd. (a).

On August 22, 2005, the trial court ordered defendant examined by a psychotherapist to provide trial counsel with information relevant to the decision "whether to enter or withdraw a plea based on insanity or to present a defense based on his or her mental or emotional condition." Cal. Evid. Code § 1017.

On November 8, 2005, the trial court declared a doubt as to defendant's competency. The court appointed three doctors to examine him. On February 22, 2006, the trial court found defendant not competent to stand trial. On March 15, 2006, defendant was committed to the Department of Mental Health.

Criminal proceedings resumed on September 6, 2006, when the trial court found defendant had been restored to competency. The District Attorney then filed a first amended complaint, which added an additional strike allegation, § 667, subds.(b)-(i), 1170.12, and two additional prior serious felony allegations. § 667, subd. (a).

On October 30, 2006, the trial court again declared a doubt as to defendant's competency. The court appointed two doctors to examine him. On January 31, 2007, the trial court found defendant not competent to stand trial. Defendant was committed to the Department of Mental Health on February 28, 2007.

Criminal proceedings resumed on August 25, 2008, when the trial court found defendant had been restored to competency.

On September 18, 2008, the District Attorney filed a second amended complaint, which alleged that defendant committed burglary by entering an inhabited residence with the intent to commit theft and with the intent to commit a sexual assault. § 220. The second amended complaint alleged that defendant had five prior convictions that qualified as strikes, §§ 667, subds.(b)-(i), 1170.12, and as serious felonies. § 667, subd. (a).

On September 25, 2008, after a preliminary hearing, the District Attorney filed an information containing the same burglary charge and prior conviction allegations as in the second amended complaint.

Defendant entered a plea of not guilty by reason of insanity (NGI) on September 29, 2008. The trial court appointed three doctors to evaluate him. Two of the doctors disagreed about whether defendant was sane at the time of the offense. The third doctor did not render an opinion because defendant terminated the evaluation process early.

On March 4, 2009, the trial court again declared a doubt about defendant's competency.

On July 10, 2009, the parties stipulated that defendant was not competent to stand trial. The trial court committed him to the Department of Mental Health that day. On December 8, 2010, after a court trial regarding defendant's competency, the trial court found defendant competent to stand trial. On January 24, 2011, defendant withdrew his NGI plea and entered a not guilty plea.

**E.    Trial Proceedings**

A jury trial began on March 16, 2011. On that date, the trial court granted defendant's request to bifurcate the prior conviction allegations, and defendant waived jury trial on those allegations.

On March 17, 2011, defendant moved to re-enter an NGI plea, but the trial court denied the motion.  On March 21, 2011, the District Attorney filed a first amended information that made non-substantive changes to the burglary charge.

On March 24, 2011, the prosecution began presenting evidence.

On March 25, 2011, the District Attorney moved to file a second amended information. The prosecution proposed to add a third theory of burglary: that defendant entered the residence with the intent to commit indecent exposure.  § 314. The trial court granted the motion on March 28, 2011.

On March 30, 2011, the jury found defendant guilty of burglary. On April 4, 2011, the trial court found all of the prior conviction allegations true.

At sentencing on September 23, 2011, the trial court imposed a 25-year determinate term for the five prior serious felony allegations with a consecutive indeterminate term of 29 years to life for the burglary.

Cal. Ct. App. Order 2-7.

**III.    LEGAL STANDARD**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A federal writ of habeas corpus may not be granted with respect to any claim that was adjudicated on the merits in State court unless the State court's adjudication of the claims: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have

5

independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings of the Supreme Court as of the time of the relevant State court decision. *Id.* at 412.

Under AEDPA, the federal habeas court must accord a high level of deference to State court decisions. *See Harrington v. Richter*, 131 S. Ct. 770, 783-85 (2011); *Felkner v. Jackson*, 131 S.Ct. 1305 (2011) (per curiam). A federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409. In other words, the writ may be granted only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the United States Supreme Court's] precedents." *Harrington*, 131 S.Ct. at 786 (2011). Furthermore, if constitutional error is found, habeas relief is warranted only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

The State court decision to which Section 2254(d) applies is the "last reasoned decision" of the State court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest State court considering a petitioner's claims, the court "looks through" to the last reasoned opinion. *Ylst*, 501 U.S. at 805. The last reasoned State court opinion on Petitioner's claims is the California Court of Appeal's denial of his direct appeal and habeas petition. *See* Cal. Ct. App. Order.

   A.    **Claim One: Denial of Petitioner's Request to Change His Plea to Not Guilty by Reason of Insanity**

   Petitioner asserts that the trial court's denial of his request to change his plea to NGI is a structural error in violation of his Fourteenth Amendment Due Process rights.  Pet. 5, 9.

      i.    **Legal Standard**

   Denial of Fourteenth Amendment Due Process Rights in a criminal trial "is the failure to observe that fundamental fairness essential to the very concept of justice."  *Lisenba v. California*, 314 U.S. 219, 236 (1941).  "[W]e must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial."  *Id.* (a coerced confession admitted in evidence is contrary to due process).  Unless fundamental fairness is abridged, federal court interference is unwarranted.  *Chavez v. Dickson*, 280 F.2d 727, 735 (9th Cir.1960).

   There are two broad types of constitutional errors that may occur during the course of a criminal proceeding: trial error and structural error.  *Hardnett v. Marshall*, 25 F.3d 875, 879 (9th Cir. 1994).  Structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself."  *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991).  Accordingly, where a criminal proceeding is undermined by a structural error, the "criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence," and the defendant's conviction must be reversed.  *Id.*  Only in those limited cases where the constitutional deprivation affects "the framework within which the trial proceeds," is the integrity of trial process so compromised that the "criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence."  *Id.*  These cases are rare and require automatic reversal, *Washington v. Recuenco*, 548 U.S. 212, 218 (2006); *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993), whether on direct or habeas review, *Powell v. Galaza*, 328 F.3d 558, 566 (9th Cir. 2003).

   The list of Supreme Court cases in which structural error analysis has been found to apply is short.  *Campbell v. Rice*, 408 F.3d 1166, 1172 (9th Cir. 2005).  They are: *Sullivan v. Louisiana*,

United States District Court
Northern District of California

508 U.S. 275, 281 (1993) (beyond a reasonable doubt standard); *Vasquez v. Hillery*, 474 U.S. 254, 264 (1986) (unlawful exclusion of member of defendant's race from grand jury); *Waller v. Georgia*, 467 U.S. 39, 49-50, 49 n.9 (1984) (right to public trial); *McKaskle v. Wiggins*, 465 U.S. 168, 177-78 n.8 (1984) (violation of right to self-representation at trial); *Gideon v. Wainwright*, 372 U.S. 335, 344-45 (1963) (deprivation of right to counsel); and *Tumey v. Ohio*, 273 U.S. 510, 531-32 (1927) (trial by biased judge). *Campbell*, 408 F.3d at 1172. *See also Herring v. New York*, 422 U.S. 853, 858-59, 863-65 (1975) (total denial of closing argument constituted structural error). In the decade since *Campbell*, the Supreme Court has found structural error in just two other situations. *See Williams v. Pennsylvania*, 136 S. Ct. 1899, 1909 (2016) (interested judge's unconstitutional failure to recuse himself from a multi-member appellate panel was structural error, even if he did not cast a deciding vote); *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006) (denial of individual's right to counsel of choice is structural error).

Some cases in which the Ninth Circuit has found structural error are: *Cordova v. Baca*, 346 F.3d 924, 930 (9th Cir. 2003) (violation of right to counsel not effectively waived where trial court failed to provide *Faretta* warnings to defendant representing himself); *Powell*, 328 F.3d at 566-67 (holding mandatory presumption in jury instruction which deprives defendant of a verdict decided by a jury violated the Sixth Amendment); *Sheppard v. Rees*, 909 F.2d 1234, 1237-38 (9th Cir. 1989) (denial of right to be informed of nature and cause of criminal accusation). Accordingly, neither the Supreme Court nor the Ninth Circuit has identified the alleged error underlying Petitioner's claim here to be a structural error. The Court will thus analyze Petitioner's claim as a trial error.

Trial error, on the other hand, is error "which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless." *Fulminante*, 499 U.S. at 307-08. This second type of constitutional error encompasses those errors "which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." *Chapman v. California*, 386 U.S. 18, 22 (1967). Such violations are amenable to harmless-error

analysis because they may be qualitatively assessed in the context of other evidence presented in order to determine their effect on the trial. *Brecht*, 507 U.S. at 629; *Fulminante*, 499 U.S. at 307; *Hardnett*, 25 F.3d at 879.

### ii.    Background

The California state appellate court summarized additional facts regarding the denial of the motion to change Petitioner's guilty plea:

> Defendant initially entered an NGI plea on September 29, 2008. On January 24, 2011, defendant withdrew his NGI plea and entered a plea of not guilty.
>
> On March 16, 2011, the first day of trial, the trial court heard arguments about the scope of expert testimony from Dr. Novak. Dr. Novak had been one of the evaluators of defendant's initial NGI plea. He did not believe defendant was legally insane at the time of the offense, but the defense planned to have him testify about defendant's mental state. The hearing concerned several issues, including (1) whether Dr. Novak would be permitted to testify that defendant was in a state of "psychotic confusion" and (2) whether defendant's statements to Dr. Novak would be admitted.
>
> During discussions of the second issue, trial counsel asserted that she had been trying to convince defendant that he could "have both his trial and N.G.I.," but that "[h]e will not do that." Following that comment, defendant indicated he wanted to withdraw his not guilty plea and re-enter an NGI plea. Trial counsel indicated she needed to research whether defendant could change his plea and indicated that she was "not prepared to mount an N.G.I. trial." Thus, the trial court continued the matter until the following day.
>
> On March 17, 2011, defendant formally moved to reenter an NGI plea. The prosecutor opposed the request and suggested that defendant was motivated by the previous day's discussion regarding the permissible scope of expert testimony.
>
> Trial counsel reiterated that she had previously "begged [defendant] to proceed NGI" but that defendant had not trusted her at the time. She explained that defendant began to trust her only after hearing her arguments during the previous day's discussion. Trial counsel reminded the court that defendant had been evaluated for an NGI plea but that the full evaluation was not completed because of defendant's "fluctuating competency issues."
>
> The trial court noted that defendant had been found competent on December 8, 2010 and that his decision to withdraw his NGI plea on January 28, 2011 was "made by a competent person who had the ability to decide for himself what he wanted to do." The trial court found that "nothing has changed" since defendant made the competent decision to enter a not guilty plea and noted that it was "the eve of trial." The trial court agreed with the prosecutor that defendant appeared to change his mind because of the discussion regarding the scope of Dr. Novak's testimony.

Cal. Ct. App. Order 8-9.

### iii. Analysis

Petitioner argues that trial court's refusal to allow him to enter a NGI plea when he made the request during motions in limine in March 2011 violated his due process rights. Pet 5. Even though trial court found him competent to stand trial based on the December 2010 finding, Petitioner contends that his mental illness constituted "good cause" for the change of plea. *Id.* at 6-7. According to Petitioner, the *Marsden* hearing in February 2011 demonstrated that he was still suffering from the same delusions that rendered him incompetent to stand trial prior to the December 2010 finding of competency. *Id.* at 8; *California v. Marsden*, 2 Cal.3d 118 (1970). As such, Petitioner concludes that the trial court erred in relying on the December 2010 finding of competency to refuse the change of plea and that the state appellate court erred in affirming the trial court. Pet. 8-10.

On appeal, the state appellate court rejected Petitioner's claim that the trial court abused its discretion by refusing his request to change the plea:

> If a defendant has entered a not guilty plea, he or she "shall be conclusively presumed to have been sane at the time of the commission of the offense charged," but "for good cause shown," the trial court may allow him or her to enter an NGI plea "at any time before the commencement of the trial." Cal. Penal Code § 1016. The decision whether to allow such a change of plea "is a matter within the sound discretion of the trial judge."
>
> At a minimum, in order to establish "good cause" for a change of plea from not guilty to NGI, the defendant must show a "plausible reason" for the delay. Some cases have also required the defendant to provide "reasonable grounds to believe that at the time of the commission of the crime," he or she was legally insane.
>
> The defendant in *Lutman* established good cause for the delay in entering an NGI plea, because after he entered a not guilty plea, the law regarding insanity defenses changed, and he sought to enter an NGI plea within two weeks of the change in law. *People v. Lutman*, 104 Cal. App. 3d 94, 98 (1980). His counsel's diligence met the "burden under Penal Code section 1016 to show 'good cause' for entry of the belated plea." The *Lutman* court held that the defendant was not required to "make an additional 'good cause' showing with respect to the merits of his insanity defense."
>
> In *Montiel*, the California Supreme Court declined to decide whether the "more restrictive standard" of *Lutman* is the proper test for a motion to change a plea under section 1016, or whether the defendant must also show that an NGI plea has potential merit. *People v. Montiel*, 39 Cal.3d 910, 921 (1985). The *Montiel* court did not need to reach the issue because in that case, the defendant's "lack of diligence," alone, justified denial of the motion. There, the defendant moved to enter an NGI plea on the third day of trial, claiming that witness

testimony had just alerted his attorney that he might have been "insane at the time the offense was committed." The trial court found that the motion to change the plea was untimely, since the trial testimony was not new, but consistent with evidence adduced at the preliminary hearing and during pretrial discovery. The California Supreme Court found no abuse of discretion.

In the present case, defendant contends that the trial court erred by focusing on defendant's competency at the time he entered his not guilty plea and the fact that "nothing ha[d] changed" since the entry of his not guilty plea. He claims these issues are not relevant to the question whether defendant had a "plausible reason" for the delay in seeking to change his plea. According to defendant, his "fluctuating competency provided that reason."

We disagree that the trial court applied an improper standard or failed to consider defendant's "fluctuating competency." The trial court's remarks show that it considered whether defendant was incompetent at any time between the time he entered the not guilty plea and the time he moved to reenter an NGI plea. The trial court implicitly recognized that, at the time of his not guilty plea, defendant had the "ability . . . to understand the nature of the criminal proceedings [and] assist counsel in the conduct of a defense in a rational manner." Trial counsel had encouraged defendant to plead NGI, but defendant had- while competent- rejected that advice. Defendant did not produce evidence that he pleaded not guilty due to incompetence, nor did he show that he was incompetent at any time following entry of his not guilty plea. Lacking such evidence, the trial court reasonably found that defendant failed to show a "plausible reason" for his delay in request to enter an NGI plea.

The trial court appears to have found that defendant simply changed his mind and that this was insufficient to meet the "good cause" standard of § 1016. Such a finding is consistent with cases considering § 1018, which governs a defendant's request to withdraw a guilty plea. For purposes of that statute, it is well-established that "[a] plea may not be withdrawn simply because the defendant has changed his [or her] mind." On this record, we find no basis to conclude that the trial court exercised its discretion "in an arbitrary, capricious or patently absurd manner resulting in a manifest miscarriage of justice."

The trial court did not abuse its discretion by finding that defendant failed to show a "plausible reason" for his delay in seeking to reenter an NGI plea and thus that he failed to show "good cause" as required by § 1016.

Cal. Ct. App. Order 9-11 (citations omitted).

The Court first addresses whether the state appellate court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. As a preliminary matter, Petitioner has not identified a specific Supreme Court precedent that "squarely addresses the issue" of how a trial court may exercise its discretion in allowing a change of plea. *Andrews v. Davis*, 798 F.3d 759, 773 (9th Cir. 2015) ("A Supreme Court precedent is not clearly established law under § 2254(d)(1) unless it 'squarely addresses the issue' in the case before the state court") (citation omitted). Instead, Petitioner merely asserts a violation of the due process clause under

the Fourteenth Amendment.  Pet. 15.  The question then becomes whether the state appellate

court's decision is contrary to, or involved an unreasonable application of other Supreme Court

precedents on the Due Process Clause of the Fourteenth Amendment.  Even though Petitioner

attempts to analogize a refusal to change plea to other circumstances in which the Supreme Court

found structural error, such as the deprivation of counsel and the right to an impartial trial judge,

Pet. 10, the alleged error has not been declared to be a structural error by the Supreme Court or the

Ninth Circuit.  Given that there is no clearly established federal law that "squarely addresses the

issue" in this case, the state court decision cannot be contrary to or an unreasonable application of

clearly established federal law.  Moreover, Petitioner's claim to the alleged due process rights

would require granting a request to change plea after trial had begun and a week before the

presentation of evidence without good cause, contrary to state statute and in the absence of clearly

established federal law.  *See* Cal. Penal Code § 1016; Cal. Ct. App. Order 6 (stating that "[a] jury

trial began on March 16, 2011" and that "[o]n March 24, 2011, the prosecution began presenting

evidence").  A refusal to grant a request to change plea after trial had begun and a week before the

presentation of evidence without good cause does not amount to a due process violation that

deprives the trial of its fairness.  *See Lisenba*, 314 U.S. at 236 ("[W]e must find that the absence of

that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily

prevents a fair trial").

Moreover, the state appellate court's ruling accurately reflects the procedure with regard to

this claim.  The trial court denied petitioner's motion to reassert an NGI plea for failure to show

good cause under Cal. Penal Code § 1016.  The trial court rendered its decision on March 16,

2011, while it was in the process of addressing the parties' motions *in limine* and just a week

before the presentation of evidence.  10RT 627-28; Cal. Ct. App. Order 6.  The state appellate

court also noted that the trial court had recognized Petitioner's "fluctuating competency" but

found that Petitioner was competent at the time of his not guilty plea.  *Id.* at 10-11.  According to

the appellate court, there was also no evidence that Petitioner was incompetent at the time he

entered his not-guilty plea.  *Id.* at 11.  The reasoning of the state appellate court and trial court

clearly followed the procedural rule as established by Cal. Penal Code § 1016 and reveals no

deprivation of due process "of such quality as necessarily prevents a fair trial." *See Lisenba*, 314 U.S. at 236.

Second, the state court appellate decision was not "based on an unreasonable determination of the facts in light of the evidence presented." Petitioner faults the trial court and the state appellate court for relying on the December 2010 finding of incompetency and for failing to account for the February 2011 *Marsden* motion to find good cause under Cal. Penal Code § 1016. Pet. 7, 9. A state court decision "will not be overturned on factual grounds unless *objectively unreasonable* in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (emphasis added). "While 'not impossible to meet,' that is a 'daunting standard—one that will be satisfied in relatively few cases,' especially because we must be 'particularly deferential to our state-court colleagues.' " *Hernandez v. Holland*, 750 F.3d 843, 857 (9th Cir. 2014) (quoting *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004)). Thus, a "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). And we "may not second-guess a state court's fact-finding process unless, after review of the state-court record," we determine "that the state court was not merely wrong, but actually unreasonable." *Taylor*, 366 F.3d at 999.

Bearing in mind this deferential standard, the Court finds that the state appellate court reasonably concluded that the trial court did not abuse its discretion in refusing Petitioner's request to change his plea. Petitioner relies on the February 2011 *Marsden* hearing to argue that there was good cause why the change of plea was delayed. Petitioner made statements at the *Marsden* hearing about how his counsel did not believe that he was under surveillance by law enforcement. Pet. 7-8. While his remarks could suggest he was suffering from delusions, they are subject to relative weighing and different probative value, in light of other facts considered by the trial court. For example, the trial court considered that based on the December 2010 finding of competency, Petitioner was able to understand the proceeding and to cooperate with his counsel. Cal. Ct. App. Order 9, 11. Moreover, the trial court noted that it was more likely that Petitioner merely changed his mind in light of the discussion regarding the scope of expert testimony

13

discussed during the motions in limine. *Id.* at 9. Given that reasonable jurists could disagree about facts based on this record, Petitioner has not shown that it was unreasonable for the trial court to find no good cause to allow for a change of plea. Accordingly, the Court finds no unreasonable determination of the facts in light of the evidence presented.

Because there is no constitutional error in the reasoning of the state appellate court, the Court need not determine whether the alleged error had "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 638.

### B. Claim Two: Limiting the Scope of Expert Testimony

Petitioner argues that the trial court prevented an expert witness, Dr. Novak, from testifying that he "was in a state of psychotic confusion" when he entered Mrs. Wright's house, in violation of his right to present a complete defense under Due Process Clause of the Fourteenth Amendment. Pet. 18-19. Alternatively, Petitioner claims ineffective assistance of counsel in the event that counsel's agreement with the prosecution on this point amounted to a stipulation that prevented the expert witness from testifying that Petitioner "was in a state of psychotic confusion." *Id.* at 27.

#### i. Legal Standard

The constitutional right to present a complete defense includes the right to present evidence, including the testimony of witnesses. *See Washington v. Texas*, 388 U.S. 14, 19 (1967). But the right is only implicated when the evidence the defendant seeks to admit is "relevant and material, and . . . vital to the defense." *Id.* at 16. Additionally, a violation of the right to present a defense does not occur any time such evidence is excluded, but rather only when its exclusion is "arbitrary or disproportionate to the purposes [the exclusionary rule applied is] designed to serve." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (internal citation and quotation marks omitted); *Michigan v. Lucas*, 500 U.S. 145, 151 (1991). Still, "[o]nly rarely" has the Supreme Court held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence. *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013) (citing *Holmes*, 547 U.S. at 331) (rule did not rationally serve any discernable purpose); *Rock v. Arkansas*, 483 U.S. 44, 61 (1987) (rule arbitrary); *Chambers*, 410 U.S. at 302-03 (state did not

even attempt to explain the reason for its rule); *Washington*, 388 U.S. at 22 (rule could not be rationally defended).

### ii. Background

The state appellate court began its review of this claim by summarizing additional facts regarding the limitation of Dr. Novak's testimony:

> The scope of Dr. Novak's testimony was first raised in the parties' motions in limine. The prosecution moved to limit expert testimony about defendant's state of mind at the time of the offense. Specifically, the prosecution requested that Dr. Novak not be permitted to testify that defendant was in a state of "psychotic confusion."
>
> Petitioner sought to admit Dr. Novak's expert opinion testimony; including his opinion that defendant was in a state of "psychotic confusion" at the time of the offense.
>
> In its supplemental points and authorities regarding the scope of Dr. Novak's testimony, the prosecution reiterated that Dr. Novak should not be permitted to testify that defendant was in a state of "psychotic confusion" at the time of the offense. The prosecution alerted the trial court to a case that had recently been published by this court. *People v. Cortes*, 192 Cal. App. 4th 873 (2011).
>
> On March 16, 2011, the trial court heard the motion concerning Dr. Novak's testimony. Trial counsel noted that she and the prosecutor had discussed and clarified some of the issues, but that they still disagreed about the "psychotic confusion" issue. The prosecutor argued that if the trial court permitted Dr. Novak to testify that defendant was in a state of "psychotic confusion" at the time of the offense, it would be tantamount to allowing him to testify about the ultimate issue of defendant's mental state. The trial court decided to defer its ruling until it had read the *Cortes* opinion.
>
> The following day, the trial court heard further arguments on the "psychotic confusion" issue. Trial counsel suggested that the dispute would be resolved if she instructed Dr. Novak not to say the words "psychotic" and "confusion" together. After the prosecutor objected that this would not go so far enough, the trial court ruled that "no matter what language, he can't opine that Petitioner lacked the mental state required to be convicted of a burglary." The trial court indicated it would allow Dr. Novak to opine that petitioner was in a "drug-induced psychosis" but that the term "psychotic confusion" would be confusing to the jury.
>
> Before Dr. Novak testified, the trial court held another hearing to discuss the scope of his testimony. Dr. Novak asked for "a little clarification on the psychotic confusion issue."
>
> The prosecutor suggested that Dr. Novak could provide a diagnosis and describe the "symptoms of a diagnosis," but not "testify to what he believes the defendant's actual state of mind" was at the time of the incident. While Dr. Novak could testify that defendant was "suffering from psychosis at the time" and that "confused thoughts" were a symptom of psychosis, he could not say that defendant "was confused." Trial counsel noted that "the distinctions are so fine,"

but generally agreed with the prosecutor's description of the limitations on Dr. Novak's testimony.

The trial court attempted to further clarify the limitations, explaining that Dr. Novak could not tell the jury that petitioner "was in a confused state on that day because that really goes to the ultimate decision the jury has to make as to whether or not [defendant] had a specific intent to do certain things, and that is solely their territory." Dr. Novak could opine that petitioner's behavior was "consistent with that," however.

At trial, Dr. Novak testified that Petitioner's behavior at the time of the incident was consistent with someone who was intoxicated and psychotic. He opined that Petitioner suffered from several mental disorders at the time of the offense, including amphetamine-induced psychotic disorder with delusions. He told the jury that a psychosis is characterized by confusion and a "break from reality." He further opined that Petitioner's statements were consistent with amphetamine intoxication, which can cause a person to become hypersexual and confused.

Cal. Ct. App. Order at 22-23.

### iii. Analysis

In his appeal, Petitioner claims that the trial court erred by limiting the scope of the testimony given by his expert witness, Dr. Novak. Pet. 19. He argues that Dr. Novak should have been permitted to testify that, at the time of the incident, he was in a state of "psychotic confusion." *Id.* at 17, 23-24. Petitioner claims that this limitation on Dr. Novak's testimony was error under state law and that it violated his federal constitutional right to present a defense. *Id.* at 21.

On appeal, the state appellate court rejected Petitioner's claim that the trial court's exclusion of certain expert opinion testimony violated his federal constitutional right:

The state appellate court reviewed the trial court's decision to admit or exclude evidence – including expert opinion testimony—for abuse of discretion. *See People v. Cortes*, 192 Cal. App. 4th 873, 908 (2011).

The relevant statutes concerning expert testimony about a defendant's mental state are California Penal Code §§ 25, 28, and 29. In § 25, the Legislature abolished the defense of diminished capacity and specified that, "[i]n a criminal action, . . . evidence concerning an accused person's intoxication, trauma, mental illness, disease, or defect shall not be admissible to show or negate capacity to form the particular purpose, intent, motive, malice aforethought, knowledge, or other mental state required for the commission of the crime charged." In § 28, the Legislature specified that "[e]vidence of mental disease, mental defect, or mental disorder is admissible solely on the issue of whether or not the accused actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged." In § 29, the Legislature restricted expert testimony as follows: "[A]ny expert testifying about a

defendant's mental illness, mental disorder, or mental defect shall not testify as to whether the defendant had or did not have the required mental states, which include, but are not limited to, purpose, intent, knowledge, or malice aforethought, for the crimes charged."

The California state appellate court reviewed the scope of expert testimony concerning a criminal defendant's mental state in *Cortes*, 192 Cal. App. 4th 873. The court explained that a defendant "cannot put on an expert to testify that, because of his mental disorder or condition . . . , he or she did not have the ability, or capacity, to form or harbor whatever mental state is a required element of the charged offense, such as intent to kill, or malice aforethought, or premeditation, or deliberation." *Id.* at 908. But "the defendant can call an expert to testify that he had a mental disorder or condition . . . , as long as that testimony tends to show that the defendant did or did not in actuality" have the required mental state, and as long as the expert does not "offer the opinion that the defendant actually did, or did not, harbor the specific intent at issue." *Id.*

The defendant in *Cortes* was convicted of first degree murder after he stabbed the victim 13 times during a fight. Before trial, a psychiatric expert interviewed the defendant and prepared a report in which he opined that the defendant had likely "entered a dissociated state" prior to the stabbing. *Cortes*, 192 Cal.App.4th at 893. However, the trial court ruled that the expert could not testify about this conclusion. It ruled that the expert could only testify "that there is such a thing as a dissociative state" and describe the characteristics of such a condition. *Id.* at 900.

In *Cortes*, the parties agreed that the judge had improperly restricted the expert testimony agreeing that the expert should have been able "to testify about defendant's particular diagnoses and mental condition and their effect on him at the time of the offense." *Cortes*, 192 Cal. App. 4th at 909. Specifically, the expert "should have been permitted to testify that in [his] opinion, defendant entered a dissociated state" and to describe "dissociation," including its "behavioral manifestations." *Id.* at 911. It also would have been proper for the expert to testify that dissociation can impair a person's memory "and can cause the person to act without conscious volition." *Id.* Such testimony was permissible because it would only "have given the jury a basis to infer" that the defendant did not actually have the mental state required for first degree murder. *Id.* at 912. In other words, the expert's proposed testimony "fell short" of expressing an opinion that the defendant actually lacked the required mental state. *Id.*

In perhaps the closest case on point, limits on a psychiatric expert testimony were upheld in *People v. Young*, 189 Cal. App. 3d 891 (1987). In *Young,* the defendant was convicted of first degree murder after he drove onto a sidewalk and struck a number of pedestrians, killing one. The defendant had a history of mental illness (specifically, schizophrenia). At trial, two psychiatrists testified that the defendant suffered from delusions and that his "reasoning was psychotic." *Id.* at 898. One psychiatrist testified that the defendant's mental illness "affected [his] reasoning at the time of the charged offenses." *Id.* at 907.

On appeal, the defendant in *Young* complained that the psychiatrists were prohibited from testifying that his mental illness "'interfered with his having malice on the night of the offenses.'" *Id.* at 906. The court disagreed, noting that the experts had been able to " 'present lengthy testimony describing [his] mental illness and its effect on his conduct.'" *Id.* at 907. The court held that despite the

limitation on the expert testimony, the defendant was "afforded the opportunity to present to the jury the relevant evidence as to his mental condition" at the time of the offense. *Id.*

Defendant contends that in this case, the trial court's ruling precluded Dr. Novak from testifying about one of his diagnosed mental disorders—psychotic confusion. He points out that in *Cortes*, this court found it was error to preclude expert testimony about the defendant's "particular diagnoses." 192 Cal. App. 4th at 909.

The record does not support defendant's claim that "psychotic confusion" was a medical diagnosis. *Cortes*, 192 Cal. App. 4th at 895 ("dissociation is a well-recognized psychiatric condition"). Dr. Novak did not diagnose defendant with "psychotic confusion," but with a variety of other conditions. Dr. Novak used the term "psychotic confusion" only when describing the mental state that resulted from defendant's drug and alcohol intoxication on the night of the incident. Dr. Novak described many of defendant's behaviors and opined that they were "consistent with psychotic confusion," and he linked that opinion to his conclusion that defendant "did not have the intent to commit the crimes for which he is charged." At one point in his report, Dr. Novak stated, "Mr. King was confused and psychotic when he entered the victim's house. He did not have intent to commit a crime but rather was acting under the delusional belief that he needed to enter the home to be safe from the police who were chasing him."

Unlike in *Cortes*, it is clear in this case that Dr. Novak's use of the term "psychotic confusion" was not meant to be a diagnosis. It is also clear that Dr. Novak believed that being in a state of "psychotic confusion" was equivalent to a lack of intent to commit the charged offense. Thus, on this record, the trial court's ruling was not inconsistent with *Cortes, Nunn,* or *Young.* Considering that Dr. Novak's report linked that term with a lack of specific intent, testimony that defendant was in a state of "psychotic confusion" would have equated or come very close to stating that defendant did not actually have the required specific intent.

Defendant contends that the only permissible restriction was to preclude Dr. Novak from testifying that defendant "lacked the intent to commit the burglary." He argues that an expert may give testimony that is " 'tantamount' " to an opinion on the ultimate issue of the defendant's mental state, as long as the expert does not explicitly state that the "element was actually not present."

To support this argument, defendant points out that in *Cortes*, this court stated: " 'By its terms, section 29 prohibits an expert witness from giving an opinion about the ultimate fact whether a defendant had the required mental state for conviction of a crime. *It prohibits no more than that.*" *Cortes*, 192 Cal. App. 4th at 910-911. He points out that this court refused to preclude an expert from offering "any opinion that could be interpreted as 'tantamount' to testifying that the defendant did not have the mental state required by the crime charged, or had a state of mind that is the opposite of, or necessarily negates, the existence of the required mental state." *Id.* at 910.

Defendant's reading of *Cortes* is too narrow. In *Cortes,* this court rejected the Attorney General's argument that the expert "could not testify that *persons* in a dissociative state 'lose their volition and go on automatic,' because '[s]uch testimony would have been tantamount to testifying that appellant did not have the mental state required by the crime charged and would have violated section

29.' " In other words, this court approved expert testimony about what "*persons in a dissociative state*" do, because such testimony would not be "tantamount" to an opinion about what *the particular defendant* actually did. Contrary to defendant's argument, "[a]n expert may not evade the restrictions of section 29 by couching an opinion in words which are or would be taken as synonyms for the mental states involved." *People v. Nunn*, 50 Cal. App. 4th 1357, 1364 (1996).

In sum, in light of Dr. Novak's report linking the term "psychotic confusion" with his opinion that defendant lacked the specific intent necessary for burglary, the trial court did not abuse its discretion by precluding him from using that term to describe defendant's mental state. As in *Young*, the trial court's ruling did not prohibit defendant from "present[ing] to the jury the relevant evidence as to his mental condition" on the day of the incident. *Young*, 189 Cal. App. 3d at 907. The trial court permitted Dr. Novak to offer his opinion that defendant suffered from psychosis and to explain to the jury the symptoms and effects of psychosis, including delusions and "confused thoughts." Dr. Novak also testified that defendant suffered from amphetamine-induced psychotic disorder with delusions and that the disorder is characterized by confusion. He also testified that defendant likely was suffering from amphetamine intoxication, which can also cause confusion. Thus, there was sufficient evidence from which the jury could determine whether appellant's mental state prevented him from actually forming the requisite specific intent required for burglary. We find no error.

Cal. Ct. App. Order 24-29 (select citations omitted).

Federal habeas review does not lie to review a state court's evidentiary ruling unless it was so prejudicial as to constitute a violation of due process. *Estelle v. McGuire*, 502 U.S. 62 (1991). A defendant does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence. *Taylor v. Illinois*, 484 U.S. 400, 410 (1980). Furthermore, the exclusion of even relevant evidence does not violate due process unless the state court's ruling offends a "fundamental principle of justice." *Montana v. Egelhoff*, 518 U.S. 37, 42-43 (1996).

Here, the state appellate court's decision affirming the trial court's exclusion of certain opinion testimony of Dr. Novak is not contrary to clearly established federal law. Neither was the evidentiary ruling "arbitrary or disproportionate" to the purposes it was designed to serve. The state appellate court reasoned that Dr. Novak was only precluded from testifying on Petitioner's mental state, such as the state of "psychotic confusion," but not from testify on Petitioner's diagnoses and their symptoms. Cal. Ct. App. Order 23, 27, 28-29. This is because California statutes and case law require that the ultimate determination of a defendant's specific intent or mental state is the sole province of the jury, and an expert is not permitted to opine on that

19

ultimate issue. *Id.* at 24-26; *cf.* Fed. R. Evid. 704(b) ("No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone"). Moreover, according to the state appellate court, Dr. Novak actually testified that Petitioner suffered from several mental disorders, including amphetamine dependence and alcohol dependence, as well as paranoid delusions. *Id.* at 4. Petitioner also admits that Dr. Novak was able to testify to Petitioner's behaviors and statements, opining that the such behaviors and statements were consistent with "psychotic confusion." Pet. 16-17; Cal. Ct. App. Order 29. As such, while the trial court excluded Dr. Novak's testimony on Petitioner's mental state, it also allowed for relevant testimony on Petitioner's mental conditions. Dr. Novak thus provided substantive testimony on Petitioner's mental conditions and opined that his behaviors were consistent with "psychotic confusion" despite not being able to directly opine that Petitioner *had* "psychotic confusion" at the time the charged crime was committed. Similar to the situation in *Young*, Petitioner "was afforded the opportunity to present to the jury the relevant evidence as to this mental condition," despite the evidentiary ruling. *See* 189 Cal. App. 3d at 907.

Petitioner's argument that the exclusionary ruling "did not rationally serve any discernible purposes" is conclusory and without support. Pet. 20-22. Relying on *Cortes*, Petitioner argues he was entitled to introduce "psychotic confusion" as a diagnosis or mental condition. Traverse 9-10; *Cortes*, 192 Cal. App. 4th at 908. However, while the court in *Cortes* found that certain testimony about psychological dissociations: "its physiological basis, it [sic] psychosocial basis, and its behavioral manifestations," was improperly excluded, it also stated that there were "confines" that would preclude "testimony on [a] defendant's capacity to have, or actually having, the intent required to commit the charged crime." *Id.* at 910. Petitioner fails to address the extensive testimony Dr. Novak did provide that Petitioner's behaviors and remarks were consistent with "psychotic confusion," as well as testimony on a variety of other mental conditions. The trial court only prevented Dr. Novak from testifying that Petitioner had the mental state of "psychotic confusion," as that would be tantamount to testifying that Petitioner did not harbor the requisite

intent required for the charged crime. Further, the state appellate court reasonably found that the record did not support Petitioner's claim that "psychotic confusion" was a medical diagnosis:

> Dr. Novak did not diagnose defendant with "psychotic confusion," but with a variety of other conditions. Dr. Novak used the term "psychotic confusion" only when describing the mental state that resulted from defendant's drug and alcohol intoxication on the night of the incident. Dr. Novak described many of defendant's behaviors and opined that they were "consistent with psychotic confusion," and he linked that opinion to his conclusion that defendant "did not have the intent to commit the crimes for which he is charged."

Cal. Ct. App. Order 27. In light of the foregoing, there is no authority, and the Petitioner has provided none, that he has a constitutional right to present the alleged diagnosis of "psychotic confusion" for that purpose. Accordingly, the Court finds that the trial court's exclusion of Dr. Novak's testimony was not "arbitrary or disproportionate" to the purpose it serves.

Because there is no constitutional error in the reasoning of the state appellate court, the Court need not decide whether the alleged error had "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 638. Nonetheless, the Court finds that even if the evidentiary exclusion was an error, it would not have substantial effect on the jury's verdict. This is because there was sufficient evidence from which the jury could assess Petitioner's mental state at the time of the offense given Dr. Novak's extensive testimony, including Petitioner's delusions and "confused thoughts." 17RT 956-63. Dr. Novak also testified that Petitioner suffered from amphetamine intoxication, which causes confusion, and amphetamine-induced psychotic disorder, a disorder characterized by confusion. 17RT 955-56, 959-61, 965, 982-83. From this testimony the jury was capable of determining whether Petitioner's mental state prevented him from forming the requisite intent for the crime of burglary. Considering the substantive testimony that Dr. Novak had already provided, allowing additional testimony from Dr. Novak that Petitioner had "psychotic confusion" would not have substantial effect on the jury's verdict.

The Court also need not reach the issue as to whether trial counsel was ineffective for "generally [agreeing] with the prosecutor's description of the limitations on Dr. Novak's testimony." Cal. Ct. App. Order 23. Petitioner makes a passing argument that to the extent that

this Court finds that there was a stipulation to the trial court's evidentiary ruling, his counsel was ineffective. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must prove two elements. First, he must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Here, the Court has already determined that the trial court's exclusion of Dr. Novak's testimony on Petitioner's mental state was not a constitutional violation but was in accordance with proper state law. Agreeing to a proper exclusionary ruling is not conduct that falls below an "objective standard of reasonableness." Even assuming that his counsel stipulated to the exclusionary ruling, there is no prejudice. As discussed above, allowing additional testimony from Dr. Novak that Petitioner had "psychotic confusion" would not have had substantial effect on the jury's verdict.

### C.    Claim Three: Referring the Jury to the Standard Jury Instructions

Petitioner asserts that the trial court violated his due process rights by referring the jury to the jury instruction without specifically instructing the jury that an individual juror could not find him guilty of burglary if the juror was unable to conclude which of the enumerated offenses he committed. Pet. 33-36.

#### i.    Legal Standard

"When a jury makes explicit its difficulties, a trial judge should clear them away with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612-13 (1946). The trial judge has a duty to respond to the jury's request for clarification with sufficient specificity to eliminate the jury's confusion. *See Beardslee v. Woodford*, 358 F.3d 560, 574-75 (9th Cir. 2004) (harmless due process violation occurred when, in responding to request for clarification, court refused to give clarification and informed jury that no clarifying instructions would be given); *United States v. Frega*, 179 F.3d 793, 808-11 (9th Cir. 1999) (trial judge's confusing response to jury's questions raised possibility that verdict was based on conduct legally inadequate to support

conviction); *McDowell v. Calderon*, 130 F.3d 833, 839 (9th Cir. 1997) (same in state capital case). The formulation of the response to a jury's question is a stage at which defense counsel can make a valuable contribution. *See Musladin v. Lamarque*, 555 F.3d 830, 839-41 (9th Cir. 2009) (discussing importance of defense counsel's participation in the formulation of a response to a jury question).

But when a trial judge responds to a jury question by directing its attention to the precise paragraph of the constitutionally adequate instruction that answers its inquiry, and the jury asks no follow up question, a reviewing court may "presume[] that the jury fully understood the judge's answer and appropriately applied the jury instruction." *Waddington v. Sarausad*, 555 U.S. 179, 196 (2009). After all, the trial judge has wide discretion in charging the jury, a discretion which carries over to the judge's response to a question from the jury. *Arizona v. Johnson*, 351 F.3d 988, 994 (9th Cir. 2003). And just as a jury is presumed to follow its instructions, it is presumed to understand a judge's answer to a question. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

### ii.    Background

The California state appellate court summarized additional facts regarding the trial judge's response to a jury question:

> During deliberations on March 29, 2012, the jury asked the following question: "Does a juror need to decide that at least one of the three charges was intended to be committed or can a juror decide that they don't know which one of the three was intended but believe beyond a reasonable doubt that at least one of the charges was intended but not sure which one? If this is the situation, can the defendant be guilty?"
>
> The prosecutor expressed concern about the jurors' confusion and proposed the parties do some research on how to address the question. Trial counsel agreed. The trial court agreed also, pointing out that CALCRIM No. 1700 was somewhat confusing to the extent it told the jury, "You may not find the defendant guilty unless you all agree that he intended to commit one of those crimes at the time of the entry," but also stated that "you do not all have to agree on which one of those crimes he/she intended." The trial court noted that the issue was "going to be critical."
>
> The trial court told the jury that the question was "very interesting" and that the jury would get an answer as soon as possible.
>
> The following day, March 30, 2011, the parties discussed how to respond to the jury question. Trial counsel argued that the jurors could not simply decide that defendant intended "some amorphous felony, which they are not sure of." Trial counsel suggested that the answer to the jury's question should be "no," that defendant could not be found guilty if a juror believed that defendant intended

one of the three target offenses but was not sure which one. Trial counsel also suggested that the trial court "redirect their attention to CALCRIM 1700, CALCRIM 220, and . . . the other instructions that define the target felonies."

The prosecutor disagreed, arguing that a juror "could have doubt as to which one" of the offenses defendant intended as long as the juror had no reasonable doubt that defendant intended one of them. He noted that "CALCRIM 1700 doesn't deal with the exact issue that's been raised by the jury question." The prosecutor suggested the response be: "A juror may find the defendant guilty if the juror finds beyond a reasonable doubt that the defendant intended to commit at least one of the three alleged crimes at the time of entry. An individual juror does not need to decide which one of the three alleged crimes the defendant intended to commit so long as the juror finds beyond a reasonable doubt that the defendant intended to commit at least one of the three alleged crimes at the time of entry."

Trial counsel objected to the prosecutor's suggested language, arguing that the "safer" course of action would be to "refer the jurors back to CALCRIM 1700 and remind them they must find beyond a reasonable doubt that the defendant intended to commit at least one of the three alleged crimes at the time of entry."

The trial court noted that it was clear that the jurors did not all need to agree "on the same target offense." However, the jury question seemed to address the situation where an individual juror was not sure which offense was intended. The trial court asked, "[D]oes that then reduce the People's burden to prove the case beyond a reasonable doubt if a juror doesn't know which peg to hang his or her hat on but in his or her mind says, I know it's one of them, I just can't choose which one?"

Further discussions ensued, during which trial counsel mostly continued to advocate the jury be referred to CALCRIM No. 1700.[1] At one point, however, trial counsel suggested the response be: "You may not find the defendant guilty of burglary unless each juror must find [sic] beyond a reasonable doubt that the defendant intended to commit at least one of the three alleged crimes at the time of entry."

The trial court ultimately responded to the jury as follows: "Please refer to Instructions 220 and 1700."

---

[1] The written version of CALCRIM No. 1700 provided: "The defendant is charged in Count One with burglary in violation of Penal Code § 459. To prove that the defendant is guilty of this crime, the People must prove that: 1. The defendant entered an inhabited dwelling house; AND 2. When he entered an inhabited dwelling house, he intended to commit theft or a violation of Penal Code § 220 or a violation of Penal Code § 314. To decide whether the defendant intended to commit theft, or a violation of Penal Code § 220 or a violation of Penal Code § 314, please refer to the separate instructions that I will give you on those crimes. A burglary was committed if the defendant entered with the intent to commit theft or a violation of Penal Code § 220 or a violation of Penal Code § 314. The defendant does not need to have actually committed theft or a violation of Penal Code § 220 or a violation of Penal Code § 314 as long as he entered with the intent to do so. The People do not have to prove that the defendant actually committed theft or violated Penal Code § 220 or Penal Code § 314. The People allege that the defendant intended to commit theft or violate Penal Code § 220 or violate Penal Code § 314. You may not find the defendant guilty of burglary unless you all agree that he intended to commit one of those crimes at the time of the entry. You do not all have to agree on which one of those crimes he intended." Cal. Ct. App. Order 35 n.11.

Cal. Ct. App. Order 33-35.

### iii. Analysis

Petitioner contends that the trial court erred because "each individual juror must decide which one of the crimes was intended." Pet. 34-35. If an individual juror does not know which offense Petitioner intended to commit, Petitioner argues that the juror essentially forgoes having to find specific intent. *Id.* at 36. In failing to respond to the jury question accordingly, Petitioner claims that the trial court violated his due process rights. *Id.* at 35. Petitioner concludes that the state appellate court also erred in holding that the individual jurors did not need to decide on a particular theory of burglary. *Id.* at 37-38.

The state appellate court disagreed that the individual jurors must each agree on a particular theory:

> A trial court's response to jury questions is governed by California Penal Code § 1138. That statute provides: "After the jur[ors] have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called."
>
> "[T]he statute imposes a 'mandatory' duty to clear up any instructional confusion expressed by the jury." *People v. Gonzalez*, 51 Cal.3d 1179, 1212 (1990); *People v. Moore* 44 Cal. App. 4th 1323, 1331(1996) (court must "help the jury understand the legal principles it is asked to apply"). However, "[t]his does not mean the court must always elaborate on the standard instructions. Where the original instructions are themselves full and complete, the court has discretion under § 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information. Indeed, comments diverging from the standard are often risky."
>
> Defendant contended that the trial court failed to clear up the jury's confusion and that it should have told the jury that each juror was required to "decide on a particular theory." He relied on *People v. Smith* 78 Cal. App. 3d 698 (1978), where the defendant was charged with burglary based on two theories: entry with the intent to commit larceny, and entry with the intent to commit assault. The defendant in *Smith* argued that "all twelve jurors ought to be required to agree on a finding of one specific intent for burglary in order for guilt to be established." *Id.* at 707. In rejecting this argument, the court explained that the defendant "could have been found guilty if six of the jurors agreed that defendant had the intent to steal while the remaining six found that he had an intent to commit an assault by means likely to produce great bodily injury. The principle announced is that as long as *each* of the twelve jurors finds that defendant had the

specific intent to commit either of the two crimes mentioned, it is immaterial as to the division of the jurors between the two intended crimes." *Id.* at 708.

The *Smith* case does not hold that when burglary is prosecuted on two alternative theories, an individual juror must decide between the two theories. *Smith* addressed the more general question of whether jury unanimity is required when a burglary prosecution proceeds on alternative theories. The defendant in *Smith* did not raise the specific argument defendant makes in this case, and thus we do not read it as supporting defendant's position. *See People v. Johnson* 53 Cal.4th 519, 528 (2012).

In fact, *Smith* itself makes clear that when the prosecution seeks a burglary conviction based on two alternative theories, a conviction may stand as long as each juror is convinced beyond a reasonable doubt that the defendant entered with the intent to commit at least one of the target offenses. As the *Smith* court stated, the jury may convict a defendant of burglary unless "one or more jurors determines that defendant had neither specific intent when he made his entry into the victim's apartment." *Smith*, 78 Cal. App. 3d at 708.

The California Supreme Court has repeatedly made it clear that when the prosecution alleges two or more target offenses in a burglary case, the individual jurors may disagree with one another "as to exactly how that crime was committed." *Russo*, 25 Cal. 4th at 1132. This is because the alleged intended crimes are not elements of the offense, but the " 'theor[ies]' of the case." *Id.* Thus, a burglary conviction will stand even if the jury has "uncertainty as to the exact burglarious intent." *Id.* at 1133. Because "the intent to commit *any* felony (or theft) suffices for burglary," "the jury need not unanimously decide, or even be certain, which felony defendant intended as long as it finds beyond a reasonable doubt that he intended some felony." *People v. Hughes*, 27 Cal. 4th 287, 351 (2002).

The California Supreme Court has further specified that when there are alternative theories of guilt, "the individual jurors themselves need not choose among the theories, so long as each is convinced of guilt." *People v. Santamaria* 8 Cal. 4th 903, 919 (1994). In *Santamaria*, the court held that jurors need not unanimously agree whether a defendant is guilty as a direct perpetrator or as an aider and abettor when the prosecution has presented those as alternative theories of guilt. The court explained: "Sometimes, as probably occurred here, the jury simply cannot decide beyond a reasonable doubt exactly who did what. There may be a reasonable doubt that the defendant was the direct perpetrator, and a similar doubt that he was the aider and abettor, but no such doubt that he was one or the other." *Id.* The court noted that as long as each individual juror is convinced of the defendant's guilt beyond a reasonable doubt, it would be "absurd . . . to let the defendant go free because each individual juror had a reasonable doubt as to his exact role." *Id.* at 920 n.8; *see also People v. Culuko*, 78 Cal. App. 4th 307, 323 (2000) (instruction properly stated "that each individual juror did not have to decide whether any given defendant was the perpetrator or the aider and abettor") (italics omitted)

The same rule applies when the prosecution presents various theories of first degree murder—the jurors need not decide on particular theory. "Each juror need only have found [the] defendant guilty beyond a reasonable doubt of the single, statutory offense of first degree murder." *People v. Pride*, 3 Cal. 4th 195, 249 (1992).

As each individual juror did not have to decide on a particular theory of guilt, it was not an abuse of discretion for the trial court to respond to the jury question by redirecting the jury to CALCRIM Nos. 220 and 1700. Those instructions explained that the jury could not find defendant guilty of burglary unless the jurors all agreed that he intended to commit one of the target crimes at the time of the entry and that they did not have to all have to agree on which one of those crimes he intended (CALCRIM No. 1700) but that they could not convict defendant of burglary unless they were convinced of his guilt beyond a reasonable doubt (CALCRIM No. 220). Redirecting the jury to these instructions was—as defendant acknowledged during the discussions below—the least "risky" approach. *Beardslee*, 53 Cal. 3d at 97.

Cal. Ct. App. Order 36-39.

Federal habeas relief can only be granted for a claim of state instructional error if it so infected the entire trial that the resulting conviction violates due process. *Estelle*, 502 U.S at 72. The test for this constitutional error is whether there is a "reasonable likelihood" that the jury misapplied the instructions. *Id.* As noted above, the Supreme Court in *Waddington* had already rejected an argument similar to Petitioner's. 555 U.S. at 196. The petitioner in *Waddington* argued that the jury's questions on the "intent requirement" of an accomplice demonstrated substantial confusion that the trial court failed to remedy. *Id.* at 195. At trial, in response to the jury's questions, the judge merely instructed the jury to reread the accomplice-liability instructions and to consider the instructions as a whole. *Id.* at 186. Concluding that the state court did not act in an objectively unreasonable manner, the Supreme Court held that "[w]here a judge 'respond[s] to the jury's question by directing its attention to the precise paragraph of the constitutionally adequate instruction that answers its inquiry,' and the jury asks no follow up question, this Court has presumed that the jury fully understood the judge's answer and appropriately applied the jury instructions." *Id.* at 196.

Consistent with the holding in *Waddington*, the Court is not persuaded that the state appellate court's decision on this issue is contrary to, or an unreasonable application of clearly established federal law. The trial court referred the jury to a constitutionally adequate instruction – CALCRIM Nos. 220 and 1700. There were no follow up questions. As such, it is presumed "that the jury fully understood the judge's answer and appropriately applied the jury instructions." *Id.*

To the extent that Petitioner contends that the jury instruction was constitutionally inadequate and impermissibly reduced the prosecution's burden of proof, Traverse 13, habeas relief is not warranted on this basis, either. The relevant portion of the instruction states: "You may not find the defendant guilty of burglary unless you all agree that he intended to commit one of those crimes at the time of the entry. You do not all have to agree on which one of those crimes he intended." Cal. Ct. App. Order 35 n.11 (citing CALCRIM No. 1700). Given that the instruction required individual jurors to find that Petitioner "intended to commit one of those crimes at the time of entry," Petitioner's argument that the instruction allowed "a juror to forgo finding specific intent" is unfounded. Further, contrary to Petitioner's contention, the instruction did not require individual juror to decide "which crime was committed," but only that "he intended to commit one of those crimes at the time of the entry." *Id.*; Traverse 13. As such, even if an individual juror decided that Petitioner "intended to commit one of those crimes," without deciding "which crime was committed," that juror would have properly followed the instruction and applied the law. *See* Answer 20 (citing *People v. Failla*, 64 Cal.2d 560, 568 (1966) ("the crime [of burglary] is complete when the one accused has entered the house of another with intent to commit *any* felony") (italics in original)).

The Court further notes that it has no authority to deviate from the state court's interpretation of state law, such as California Penal Code § 459, governing the offense of burglary in this case. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (holding that a "state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"). The state appellate court concluded that CALCRIM Nos. 220 and 1700 given by the trial court constituted a proper response to the jury's question after extensively analyzing California law on the crime of burglary. Petitioner provides no contrary California authority that CALCRIM Nos. 220 and 1700 are deficient. Bound by the interpretation of California law, this Court does not find that the response given by the trial court was constitutionally inadequate or that it impermissibly reduced the prosecution's burden of proof

Because there is no constitutional error in the reasoning of the state appellate court, it is moot whether the alleged error had "a substantial and injurious effect or influence in determining

28

the jury's verdict." *Brecht*, 507 U.S. at 638.

## V.  CONCLUSION

After a careful review of the record and pertinent law, the Court concludes that the Petition for a Writ of Habeas Corpus must be DENIED.

Further, a Certificate of Appealability is DENIED.  *See* Rule 11(a) of the Rules Governing Section 2254 Cases.  Petitioner has not made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure.  *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk shall terminate any pending motions, enter judgment in favor of Respondent, and close the file.

**IT IS SO ORDERED.**

Dated: June 2, 2017

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California